# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES CARL KELLY, <br> Plaintiff, <br> v. <br> P. SULLIVAN, et al., <br> Defendants. | Case No. 18-cv-06386-SI <br><br> **ORDER OF DISMISSAL** <br> Re: Dkt. Nos. 15, 16 |

James Carl Kelly, an inmate currently housed at the California State Prison - Sacramento, filed this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983. The court reviewed the complaint and dismissed it with leave to amend. The amended complaint is now before the court for review pursuant to 28 U.S.C. § 1915A. Kelly's motion for appointment of counsel also is before the court for consideration.

**BACKGROUND**

Understanding Kelly's amended complaint is aided by some very basic information about anticoagulant medications. According to "A Patient's Guide to Taking Warfarin" available on the American Heart Association's website (www.heart.org), "[w]arfarin (brand names Coumadin and Jantoven) is a prescription medication used to prevent harmful blood clots from forming or growing larger." The guide also explains: "The goal of warfarin therapy is to decrease the clotting tendency of blood, not to prevent clotting completely. Therefore, the effect of warfarin must be monitored carefully with blood testing. On the basis of the results of the blood test, [the patient's] daily dose of warfarin will be adjusted to keep [his or her] clotting time within a target range." The blood test result is reported as the International Normalized Ratio (INR), a standardized way of expressing the

prothrombin time value. *Id.* Lovenox is another anticoagulant used to prevent blood clots.

The amended complaint alleges the following:

On about October 30, 2012, Kelly was told by five doctors at a hospital in Bakersfield that, "since I already had 'tiny nodules' on left lung and 'hepetities C' I could only take Coumadin at 7.5 mg. and only Coumadin and if my I.N.R. is low or high I should get Lovenox injection 80 mg. If I don't the tiny nodules will leave left lung, and go to right lung which would cause me 'lung cancer.'" Docket No. 15-1 at 5-7 (errors in source). Kelly has been repeating this information to doctors ever since then. *Id.* at 7.

Almost six years later, in about June through August 2018, and while incarcerated at Salinas Valley State Prison, Kelly saw Dr. Bright because his INR level was low and he was a high-risk heart patient. Dr. Bright prescribed too high a dose of Coumadin for Kelly. Docket No. 15-1 at 5. Kelly became dizzy when taking the medication at the higher dose. He tried to explain to Dr. Bright the information he had received in 2012 from other doctors, i.e., that he was only to receive 7.5 mg. Coumadin and, if his INR level was too high or low, he was to receive an 80 mg. injection of Lovenox. *Id.* at 5-9. Dr. Bright did not believe Kelly. *Id.* at 5, 9.

In about July 2018, Dr. Lawrence Gamboa became Kelly's doctor. Like Dr. Bright, Dr. Gamboa did not believe Kelly's statement that, per the orders from the Bakersfield doctors in 2012, Kelly was only to receive 7.5 mg. of Coumadin. *Id.* at 7. Dr. Gamboa prescribed a higher dose of Coumadin for several months and then reduced the dose to 7.5 mg. *Id.*

Although Kelly alleges that the doctors in 2012 told him that he should receive an 80 mg. injection of Lovenox if his INR level was too "high or low," *id.* at 7, he also faults Dr. Bright and Dr. Gamboa for not adjusting the Lovenox dose to avoid adjusting the Coumadin dose, *id.* at 9.

In addition to Dr. Bright and Dr. Gamboa, Kelly names as a defendant P. Sullivan, the Salinas Valley State Prison associate warden. Sullivan apparently is sued on the theory that he is in charge of the other two defendants. *See id.* at 5.

Although Kelly's theory of relief here is that Drs. Bright and Gamboa are liable because they did not adhere to the medication orders given to Kelly six years earlier by doctors at a Bakersfield hospital, he pursued a contradictory theory in an earlier action where he claimed that the Bakersfield

2

1  doctors gave him bad medication advice. In a complaint signed under penalty of perjury, Kelly sued the Bakersfield doctors for, among other things, causing him to have a "blood disease" and telling him that he could "only take one kind of blood thinner medication, called Coumadin at 7.5 mg. because of the anemia, hepetities C and the tiny nodules I have on left lung, which now today is proved to be a lie." *Kelly v. Islam*, E. D. Cal. No. 18-cv-0018 DAD JDP, Docket No. 1 at 3. He further alleged in that action that, as a result of the Bakersfield doctors' statement that he was only to take a specific dose of Coumadin, he experienced a mental breakdown and attempted to commit suicide when other doctors ordered different doses of Coumadin. *Id.* at 5. The court takes judicial notice that Kelly filed a complaint with these allegations in the U.S. District Court for the Eastern District of California. *See* Fed. R. Evid. 201(b)(2).

**DISCUSSION**

A.  Review of Amended Complaint

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id*. at § 1915A(b)(1),(2). *Pro se* complaints must be liberally construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

Federal Rule of Civil Procedure 8(a)(2) requires that the complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 544 (citations omitted). A court may dismiss a complaint when it does not contain enough facts to state a claim to relief that is plausible on its face. *See id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

3

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's prohibition of cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). To establish an Eighth Amendment claim based on inadequate medical care, a prisoner-plaintiff must show: (1) a serious medical need, and (2) deliberate indifference thereto by a defendant. Deliberate indifference may be demonstrated when prison officials deny, delay or intentionally interfere with medical treatment, or it may be inferred from the way in which prison officials provide medical care. *See McGuckin v. Smith*, 974 F.2d 1050, 1062 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Deliberate indifference is not shown by a mere difference of opinion between doctors or by mere negligence. *Toguchi,* 391 F.3d at 1058, 1060-61.

The amended complaint fails to state a claim upon which relief may be granted. Kelly alleges that Dr. Bright and Dr. Gamboa failed to follow a medication regimen that other doctors had ordered six years earlier. The allegations of the amended complaint do not state a deliberate-indifference claim that is plausible on its face. First, it is not plausible that the 2012 medication order was set in stone and *never* to be changed regardless of what happens to the patient. But that is just what Kelly's amended complaint suggests, i.e., that no doctor could ever stray from the 2012 order for 7.5 mg. of Coumadin. Second, it is not plausible that Drs. Bright and Gamboa erred in not following the alleged instructions from the Bakersfield doctors to administer 80 mg. of Lovenox if Kelly's INR level was too "low or high." Docket No. 15-1 at 7. Although Lovenox might be right for one of these conditions, it defies common sense to say that the same solution is right for both of

4

these conditions. Kelly's allegation is akin to saying that insulin should be administered when blood sugar either plummets or spikes, or that an anti-hypertension medication should be administered when the patient's blood pressure is either low or high. Third, the allegations in the amended complaint are incompatible with the statements Kelly made under penalty of perjury in the action filed earlier in the Eastern District of California: whereas he alleges in this action that Drs. Bright and Gamboa improperly failed to follow the 2012 orders from Bakersfield doctors, Kelly stated under penalty of perjury in the earlier action that those very orders from the Bakersfield doctors were wrong. The amended complaint does not allege facts that plausibly suggest Dr. Gamboa and Dr. Bright were deliberately indifferent to Kelly's medical needs when they adjusted the dose of Coumadin to be administered to Kelly instead of blindly following the directions given six years earlier. At the very most, he has identified a difference of opinion between doctors, but that is insufficient to state a claim for deliberate indifference to medical needs. *See Toguchi*, 391 F.3d at 1058.

The amended complaint also does not state a claim against associate warden Sullivan. No facts are alleged suggesting that Sullivan played any personal role in Kelly's medical care. Sullivan apparently was sued on a theory that he was in charge of the two doctor-defendants. There is no respondeat superior liability under § 1983, i.e., no liability under the theory that one is liable simply because he employs a person who has violated a plaintiff's rights. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978)*; Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Further leave to amend will not be granted because it would be futile. In the order of dismissal with leave to amend, the court explained the requirements for stating an Eighth Amendment deliberate indifference to medical needs claim and explained that Kelly needed to link each individual defendant by alleging what that person did or failed to do that caused a violation of his rights. Docket No. 8 at 2-3. Kelly was unable or unwilling to allege an Eighth Amendment claim.

B. <u>Miscellaneous Motions</u>

Kelly's motion to file an amended complaint is DISMISSED as unnecessary. Docket No. 15. When the court orders a party to file an amended complaint, as occurred here, there is no need for that party to file a motion to amend when he files his amended complaint.

Kelly requests that counsel be appointed to represent him in this action. Docket No. 16. A district court has the discretion under 28 U.S.C. §1915(e)(1) to designate counsel to represent an indigent civil litigant in exceptional circumstances. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). This requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *See id.* Neither of these factors is dispositive and both must be viewed together before deciding on a request for counsel under § 1915(e)(1). Here, exceptional circumstances requiring the appointment of counsel are not present because the amended complaint does not state a claim upon which relief may be granted. There is no chance of success on the merits of this action. The request for appointment of counsel therefore is DENIED. Docket No. 16.

## CONCLUSION

This action is dismissed because the amended complaint fails to state a claim upon which relief may be granted.

**IT IS SO ORDERED**.

Dated: August 9, 2019

_____
SUSAN ILLSTON
United States District Judge